No. 2--95--1483

________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE         )  Appeal from the Circuit

OF ILLINOIS,                    )  Court of Lake County.

                                )

     Plaintiff-Appellee,        )

                                )  No. 92--CF--1176

v.                              )

                                )

TIMOTHY G. SMITH,               )  Honorable

                                )  Raymond J. McKoski,

     Defendant-Appellant.       )  Judge, Presiding.             

________________________________________________________________

     JUSTICE HUTCHINSON delivered the opinion of the court:

     Defendant, Timothy G. Smith, appeals the order of the circuit

court of Lake County denying his motion to reconsider his sentence. 

On appeal, defendant argues (1) that the trial court abused its

discretion when it sentenced defendant, and (2) that the mittimus

be corrected to conform to the trial court's oral pronouncement of

defendant's conviction.  We affirm.  

     On May 20, 1992, defendant was charged with four counts of

aggravated criminal sexual assault (720 ILCS 5/12--14 (West 1992))

and one count of aggravated criminal sexual abuse (720 ILCS 5/12--

16 (West 1992)).  On August 17, 1992, defendant admitted to

violating his probation and entered negotiated pleas of guilty to

one of the three counts of aggravated criminal sexual assault and

one count of aggravated criminal sexual abuse.  In return for the

plea, the State agreed to (1) dismiss the remaining three counts of

aggravated criminal sexual assault, and (2) recommend a sentence

cap of 25 years' imprisonment.  

     Prior to the sentencing hearing, the trial court ordered an

updated presentence investigation report.  The presentence report

indicated that defendant was originally sentenced to three years'

probation in July 1988 for aggravated criminal sexual abuse.  In

August 1990 defendant was resentenced to two years' probation for

violating his probation sentence by failing to cooperate with

treatment for sexual offenders.  In January 1991 defendant was held

in contempt of court for violating the terms of his probation and

ordered to complete the remainder of his sentence in the Lake

County jail.  The report also contained information about

defendant's employment record, family background, and his

participation in counseling programs.  Defendant was ordered to

attend counseling at the Community Youth Network as a condition of

his previous sentence of probation for aggravated criminal sexual

abuse.  He was refused treatment in April 1992 because of his

failure to pay for the services; in May 1992 defendant committed

the offenses at issue in the present case.  The report also

indicates that defendant admits to his criminal behavior, but he

"neither understands or [sic] is able to control his behavior." 

Defendant paid his court obligations in full, reported regularly to

the probation department, and completed his public service.  

     Defendant gave a voluntary statement to the Waukegan police

department in May 1992 in which he described in detail his version

of the events of the sexual assault on the victim.  Defendant

stated that he had "no intentions of hurting the little girl," but

that he "just wanted to do it and let her go."

     A mental health evaluation of defendant conducted by Alfred

Marx, Ph.D., was filed on September 25, 1992.  A June 1990 report,

partially described in the evaluation, characterized defendant's

intellectual functioning at the top of the "mentally deficient"

range and the "mild mental retardation" category.  Dr. Marx' report

states in part:

     "[Defendant] has little ability to see things in any

     perspective, to connect past experiences with the present, or

     to modify his present understanding or behavior in accordance

     with anticipated future events or consequences."

Further, Dr. Marx observed recurring themes based on defendant's

comments:  (1) acknowledgment that his behavior was wrong,

inappropriate, and illegal; (2) a lack of understanding about how

he could have allowed himself to engage in such behavior; (3)

projecting blame to others; (4) complaints that he is misunderstood

and unfairly treated; (5) anger; and (6) recognition that he needs

treatment.  Dr. Marx concluded that defendant is emotionally

immature, "functioning at a child-like level," as well as

manifesting a significant problem with impulse control.  Dr. Marx

went on to state:

     "So far as efforts at helpful interventions are concerned,

     [defendant] has a reported history of failure to consistently

     follow through with the conditions of probation, with the

     requirements of treatment programs, etc.  Thus it was reported

     that he failed to report consistently to probation, that he

     'walked out of' work release, and that he was 'unsuccessfully

     discharged from the Community Youth Network's sexual

     offenders' program' because of 'an irresponsible and avoidant

     stance with regard to his treatment.' *** [Defendant's]

     failure to consistently follow through with the requirements

     of probation or of any outpatient treatment program ***

     appears *** to be a function of a combination of his

     intellectual limitations and a severe personality disorder

     which *** renders him emotionally and behaviorally unstable

     and interpersonally dysfunctional[.] *** [Defendant] does not

     seem to readily learn from experience so that prior offenses,

     jail, probation, and the threat of consequences don't

     'stick.'  " 

Dr. Marx diagnosed defendant with pedophilia, mild mental

retardation, and personality disorder.  He opined that defendant is

a high risk for reoffending and too high of a risk for outpatient

treatment.  

     The trial court sentenced defendant to a term of 20 years'

imprisonment.  Following two earlier remands of this case,

defendant now appeals the length of his sentence as well as the

correctness of the mittimus.  

     As a preliminary matter, we must dispense with defendant's

motion to strike a portion of the State's argument in its surreply

brief.  Defendant contends that, because the State did not request

argument on defendant's second issue, the State exceeded its scope

by providing argument on the second issue.  Defendant has moved to

strike this portion of the State's surreply brief.  Supreme Court

Rule 341 (155 Ill. 2d R. 341) governs the form and contents of

appellate briefs.  See also In re M.M., 156 Ill. 2d 53, 56 (1993). 

Adherence to supreme court rules governing briefs is not an

inconsequential matter.  Lagen v. Balcor Co., 274 Ill. App. 3d 11,

14-15 (1995).  We have reviewed our order granting the State's

motion to file a surreply brief and the State's surreply brief.  We

note that this court's order did not limit the contents or scope of

the State's surreply brief.  We, therefore, deny defendant's motion

to strike.

     Before addressing the merits of defendant's appeal, the State

contends that defendant is not entitled to challenge his sentence,

based on the recent decision of our supreme court in People v.

Evans, 174 Ill. 2d 320 (1996).  The State argues that, because his

sentence was entered as part of a negotiated guilty plea, defendant

was bound to file a motion to withdraw the negotiated guilty plea. 

Because defendant did not do so, the State maintains, he is

precluded from challenging his sentence on appeal.

     Evans is a consolidation of two cases, People v. Meeks, 275

Ill. App. 3d ___ (unpublished order under Supreme Court Rule 23),

and People v. Evans, 275 Ill. App. 3d ___ (unpublished order under

Supreme Court Rule 23).  In Meeks, the defendant and the State

negotiated a plea agreement whereby Meeks would plead guilty to one

charge; in exchange, the State would move to dismiss two other

charges, several other pending charges, and recommend a determinate

sentence of 10 years' imprisonment.  The defendant in Evans

negotiated a plea agreement with the State whereby Evans would

plead guilty to two charges; in exchange, the State would move to

dismiss a third charge and recommend concurrent sentences of 11 and

5 years' imprisonment, to serve concurrently with other sentences

previously imposed in another county.  The trial courts accepted

the negotiated plea agreements and sentenced the defendants to the

recommended prison terms.  Following the entry of the trial court's

judgment, each defendant then sought to reduce his sentence by

filing a motion to reconsider the sentence under Supreme Court Rule

604(d)(145 Ill. 2d R. 604(d)).

     Our supreme court analyzed the application of Supreme Court

Rule 604(d) to negotiated guilty pleas, as opposed to open guilty

pleas.  The Evans court applied contract law principles to the

consolidated cases because the defendant and the State agreed that

the defendant would plead guilty to certain charges, and the State

would (1) dismiss other charges, and (2) recommend a specific

sentence.  Evans, 174 Ill. 2d at 327.  "[U]nder these

circumstances," the court stated, "the guilty plea and the sentence

'go hand in hand' as material elements of the plea bargain." 

Evans, 174 Ill. 2d at 332.  The supreme court, therefore, held that

"following the entry of judgment on a negotiated guilty plea, even

if a defendant wants to challenge only [her or] his sentence, [she

or] he must move to withdraw the guilty plea and vacate the

judgment."  Evans, 174 Ill. 2d at 332.  To hold otherwise, the

court stated, would render meaningless the negotiated plea

agreement entered into between the parties.    

     The Evans court seems to suggest that only two types of guilty

pleas exist:  open guilty pleas and negotiated guilty pleas.  The

court did not define "negotiated guilty plea," but defined "open

guilty plea" in the context of defendants who plead guilty "without

receiving any promises from the State in return."  Evans, 174 Ill.

2d at 332.  To some, this may imply that everything else is

relegated to the category of "negotiated" guilty pleas.  As a

result of this implication, the State argues, defendants wishing to

challenge their sentence pursuant to anything other than an open

plea must first move to withdraw their guilty plea and vacate the

judgment entered thereon.  

     The State's position is overly simplistic.  The criminal

justice system is blessed with a panoply of negotiated guilty

pleas.  See generally 2 W. La Fave & J. Israel, Criminal Procedure

§20, at 553 (1984) (discussing guilty pleas and providing

examples).  Negotiated guilty pleas are generally the result of an

agreement between the defendant and the State.  The two parties

usually agree upon two major areas, taken singularly or in

combination:  charging matters and sentencing matters.  One form of

negotiated plea consists of an arrangement whereby the defendant

and the State agree that the defendant will plead guilty to a

lesser offense than the actual crime, perhaps to limit the trial

court's sentencing discretion, or to avoid a record of conviction

on the more serious charge.  Other forms of negotiated pleas exist

whereby the parties agree that the defendant will plead guilty to

the original charge in exchange for a specific disposition, such as

a certain sentence, or a promise of leniency, or a request for

probation.  Yet another form consists of the defendant pleading

guilty to a charge in exchange for the State's promise to drop or

not file additional charges.  

     Combining the charging issues and sentencing issues may lead

to a negotiated plea with the defendant pleading guilty to a charge

or charges in exchange for the State's dismissal of other charges

and a period-specific sentence.  See Evans, 174 Ill. 2d 320. 

Another combination may occur when the defendant pleads guilty and

the State agrees to drop other charges and recommend a minimum and

maximum sentencing range.  See People v. Catron, 285 Ill. App. 3d

36 (1996).  Yet another may consist of the defendant pleading

guilty to certain charges in exchange for a dismissal of other

charges and a sentence not to exceed a certain number of years. 

See People v. Wilson, 286 Ill. App. 3d 169 (1997).  

     With regard to sentencing issues, we are mindful that imposing

a sentence upon a defendant is the function of the trial court, not

the prosecutor.  See 730 ILCS 5/5--8--1 (West Supp. 1995).  It,

therefore, follows that, even if the defendant and the State were

to agree upon a specific sentence, the trial court possesses the

ultimate authority and discretion to impose that specific sentence,

decrease the length of the agreed-upon sentence, or increase the

defendant's incarceration, subject to the established statutory

guidelines. 

     We recognize the difference of opinion on this issue among the

districts of the Illinois Appellate Court since Evans was decided. 

In People v. Leach, 284 Ill. App. 3d 4 (2d Dist. 1996), the

defendant and the State entered into a negotiated plea agreement

whereby the defendant would plead guilty to a charge of escape and

the State would recommend a sentence of two years' imprisonment,

served consecutive to a sentence imposed for a separate conviction. 

The trial court accepted the plea agreement; subsequently, the

defendant petitioned to have his sentences run concurrently.  The

Appellate Court, Second District, held that the defendant was not

entitled to a reduction of his negotiated sentence because it had

been specifically bargained for in his plea agreement, similar to

the defendants in Evans.  Leach, 284 Ill. App. 3d at 6.  Thus, the

Leach court noted relief could only be obtained by moving to

withdraw his guilty plea and vacate the judgment, as well as

showing that granting the motion was necessary to correct a

manifest injustice.  Leach, 284 Ill. App. 3d at 6-7.

     In People v. Catron, 285 Ill. App. 3d 36 (4th Dist. 1996), the

defendant pleaded guilty to six counts of residential burglary in

exchange for a recommended prison sentence ranging from 4 to 15

years.  The trial court imposed concurrent terms of 15-year

sentences, and the defendant appealed, claiming the sentence was

excessive.  The Appellate Court, Fourth District, applied contract

principles relied upon in Evans and affirmed, stating that the

defendant implicitly conceded that a 15-year sentence could not be

excessive because he had agreed to a range of sentences.  The

Catron court proceeded:

          "We recognize that Evans did not consider the situation

     where the alleged sentencing was allowed to be something more

     than a mere claim that the sentence is excessive.  One such

     claim is that which defendant attempts to raise here, namely,

     that the trial court gave him the maximum sentence based, in

     part, upon improper consideration of a factor inherent in the

     crime.  Had defendant raised this issue in the trial court, we

     do not believe Evans would foreclose a motion to reconsider

     sentence without vacating the plea."  Catron, 285 Ill. App. 3d

     at 37-38.

     Similar to the present case is People v. Wilson, 286 Ill. App.

3d 169 (2d Dist. 1997).  In Wilson, the defendant entered a

negotiated plea of guilty to various offenses.  In exchange, the

State agreed to nol-pros one charge and recommend a sentence cap of

nine years' imprisonment for the other three charges.  The trial

court accepted the plea agreement and imposed concurrent sentences

of nine years' imprisonment.  Defendant appealed.  The Wilson court

distinguished Evans, in that the defendants in Evans agreed to

specific sentences in exchange for their guilty pleas and the trial

courts exercised no discretion in sentencing the defendants.  The

Appellate Court, Second District, thus held that, because the trial

court had the discretion to determine the appropriate sentence for

defendant, the defendant could raise the issue on appeal as to

whether the trial court abused its discretion when it sentenced the

defendant without moving to withdraw his plea.  Wilson, 286 Ill.

App. 3d at 172-73.  

     In People v. Johnson, 286 Ill. App. 3d 597 (1997), the State

agreed to dismiss several charges in exchange for the defendant's

guilty plea to the remaining counts.  No agreement on sentencing

was reached.  The Appellate Court, Second District, held that the

defendant was not precluded from challenging the trial court's

sentence only because the imposition of the sentence was left to

the discretion of the trial court.

     Finally, in People v. Sanders, No. 3--95--0294 (March 21,

1997), the defendant pleaded guilty to one charge of first degree

murder in exchange for a sentencing cap of 45 years.  The trial

court imposed a 45-year sentence.  The trial court subsequently

denied the defendant's motion to withdraw his guilty plea. 

Defendant appealed, claiming his sentence was excessive.  The

Appellate Court, Third District, modeled its ruling after Evans and

Catron.  The Sanders court simply affirmed, determining that the

defendant knew that the trial court could impose a 45-year sentence

when he entered his negotiated plea.  By agreeing to the plea, the

Sanders court stated, the defendant effectively agreed that a 45-

year sentence was not manifestly unjust.  Sanders, slip op. at 2. 

     However, the specially concurring opinion by Justice Holdridge

maintains that Catron impermissibly expanded the Evans holding, and

analogized the plea in Sanders to an open plea.  Justice Holdridge

would have allowed a discussion on the merits of the defendant's

claim because "[w]here a defendant pleads guilty in exchange for a

sentencing cap, the trial court will choose from a range of

potential sentences."  Sanders, slip op. at 2 (Holdridge, J.,

specially concurring).  Further, "there is always the danger that

the court will not properly exercise its discretion.  To prohibit

such a defendant from appealing an excessive sentence simply

because [the defendant] 'bargained for' that range is ***

fundamentally unfair."  Sanders, slip op. at 2 (Holdridge, J.,

specially concurring). 

     In each of the cases permitting review of a defendant's

sentence following a negotiated plea agreement without requiring a

motion to withdraw the plea, the common denominator of law seems to

be that when a trial court exercises any discretion in imposing a

sentence, a defendant should be allowed to challenge that sentence

to determine whether the trial court abused its discretion.  In the

present case, defendant entered a negotiated plea of guilty to one

count of aggravated criminal sexual assault and one count of

aggravated criminal sexual abuse.  In return, the State agreed to

dismiss three other counts of aggravated criminal sexual assault

and recommend a sentence cap of 25 years' imprisonment.  Because

the trial court exercised its discretion to impose a sentence of 20

years' imprisonment for defendant, we determine that defendant's

subsequent motion to only reconsider his sentence was proper and

we, therefore, have jurisdiction to review the trial court's order

denying it.

     Defendant contends that the trial court erred in refusing to

consider certain mitigating factors of defendant, i.e., that

defendant is mentally retarded, functions at a child-like level,

suffers from a severe personality disorder, and did not intend to

cause serious harm to the victim. 

     Reviewing courts have the power under Supreme Court Rule

615(b)(4) (134 Ill. 2d R. 615(b)(4)) to reduce sentences.  The

determination and imposition of a sentence is a matter involving

considerable judicial discretion, and our standard of review to be

applied is whether the trial court abused its discretion.  People

v. Shaw, 278 Ill. App. 3d 939, 953 (1996), citing People v. Harris,

187 Ill. App. 3d 832, 843 (1989); see also People v. Streit, 142

Ill. 2d 13, 15 (1991).  The trial court has broad discretionary

powers in choosing the appropriate sentence a defendant should

receive.  People v. Jones, 168 Ill. 2d 367, 373 (1995).  The trial

court is in a superior position to assess the credibility of the

witnesses and to weigh the evidence presented at the sentencing

hearing.  Jones 168 Ill. 2d at 373, citing People v. Younger, 112

Ill. 2d 422, 427 (1986), quoting People v. La Pointe, 88 Ill. 2d

482, 492-93 (1981).  Further, a reviewing court will not substitute

its judgment for that of a sentencing judge simply because it might

have balanced the sentencing factors differently.  Streit, 142 Ill.

2d at 19, citing People v. Pittman, 93 Ill. 2d 169, 178 (1982);

People v. Orsby, 286 Ill. App. 3d 142, 153 (1996).

     After reviewing the record, we find that the trial court did

not abuse its discretion in sentencing defendant to 20 years'

imprisonment.  The record shows that the trial court did not merely

give "lip service" to defendant's mitigating factors, but

thoroughly considered the evidence presented and weighed the

appropriate factors in aggravation and mitigation that influenced

his sentencing decision.  Factors specifically mentioned were

defendant's use of a vibrator on the victim; defendant's cognizance

that he was on probation at the time of the assault; defendant's

functioning at the top of the mentally deficient range; and

defendant's suffering from a personality disorder.  The trial court

also took into account defendant's criminal history and his failure

to maintain his probation.  The trial court further considered

defendant's explanation that he was turned away from counseling

approximately two weeks prior to the instant offense occurring. 

Nevertheless, weighing the mitigating evidence against the

aggravating circumstances, the trial court chose to impose a

lengthy term of imprisonment, stating that defendant is a danger to

the community and needed to be sentenced for a lengthy term.  In

light of these observations of the trial court at the sentencing

hearing and the hearing to reconsider defendant's sentence, the

record fails to demonstrate an abuse of discretion, and we see no

reason to disturb the sentence.  

     Defendant's second issue on appeal is that the mittimus must

be corrected to conform to the trial court's oral pronouncement of

defendant's conviction.  During the sentencing hearing, the trial

court stated:

          "[T]his sentence is on Count 1 [aggravated criminal

     sexual assault] ***.  Count 5 [aggravated criminal sexual

     abuse] *** arises from the same conduct in the same

     transaction as the other offense, Count 1, and as a result I

     enter no judgment of conviction on that, and judgment of

     conviction is just entered on Count 1 ***."

The mittimus contained in the common-law record shows that

defendant was convicted of both aggravated criminal sexual assault

and aggravated criminal sexual abuse.  

     Where the report of proceedings conflicts with the common-law

record, the report of proceedings will prevail and the common-law

record must be corrected.  People v. Peeples, 155 Ill. 2d 422, 496

(1993); People v. Stingley, 277 Ill. App. 3d 239, 242 (1995); see

also People v. Mitchell, 234 Ill. App. 3d 912, 921 (1992)(holding

that misstatements made on a mittimus should be corrected to

reflect the proper judgment of the court).  A reviewing court has

a duty to resolve contradictions that exist between the common-law

record and the report of proceedings by looking at the record as a

whole.  Stingley, 277 Ill. App. 3d at 242, citing People v. Fike,

117 Ill. 2d 49, 56 (1987).

     In the sentencing hearing, the trial court imposed a 20-year

sentence of incarceration upon defendant.  The trial court

proceeded to inform defendant of his right to appeal, procedures

that defendant must comply with should he desire an appeal, and the

nature of the hearings that would take place if defendant continued

in his appeal.  After defendant indicated his understanding of the

trial court's instructions, the trial court specifically made its

statements regarding the judgment of conviction as to aggravated

criminal sexual assault.  The only other issue discussed following

the trial court's judgment of conviction concerned the

certification of defendant as an habitual child sex offender.   

     Upon review of the record as a whole, we find that the plain

language of the transcript at the sentencing proceeding reveals

that the trial court entered a judgment of conviction as to

aggravated criminal sexual assault and entered no judgment of

conviction as to aggravated criminal sexual abuse.  Remand is

unnecessary because this court has the authority to directly order

the clerk of the circuit court to make the necessary correction. 

134 Ill. 2d R. 615(b)(1); People v. McCray, 273 Ill. App. 3d 396,

403 (1995).  Accordingly, we direct the clerk to amend the mittimus

to reflect only defendant's conviction of aggravated criminal

sexual assault.

     For the reasons stated, the judgment of the circuit court of

Lake County is affirmed.

     Affirmed.

     INGLIS and THOMAS, JJ.,concur.